UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

MARGARET HILL-SATTERFIELD,　　)
　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　　No.:　　3:24-CV-249-TAV-DCP
　　　　　　　　　　　　　　　　)
ANGIE K. LAUDERDALE,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Defendant/ Counterplaintiff/　)
　　　　　　Third-Party Plaintiff,　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
APRIL SWITZER (a/k/a/ April Stadel),　)
　　　　　　　　　　　　　　　　)
　　　　　　Third-Party Defendant.　　)

**<u>MEMORANDUM OPINION AND ORDER</u>**

This civil action is before the Court on defendant's motion for summary judgment [Doc. 42]. Plaintiff responded [Doc. 52], defendant replied [Doc. 55], plaintiff filed a sur-reply [Doc. 60], and defendant responded to the sur-reply [Doc. 61]. Accordingly, this matter is ripe for review. *See* E.D. Tenn. L. R. 7.1(a). For the reasons below, defendant's motion for summary judgment [Doc. 42] will be **GRANTED**.

**I.　　Background**

This case involves a contract dispute between family members. Defendant Angie K. Lauderdale is the sole child and heir of Rex Hill ("Hill"), who died on February 20, 2022 [Doc. 42, p. 22]. Plaintiff Margaret Satterfield and Luther Hill ("Luther") are Hill's siblings who cared for him prior to his death [*Id.*]. Third-party defendant April Stadel is plaintiff's daughter [Doc. 27, p. 11; Doc. 39, p. 1].

After Hill's passing, defendant hired an attorney to assist her in opening probate and administering his estate (the "Estate"), which includes real property, vehicles, and financial holdings [Doc. 1-1, p. 3; Doc. 27, p. 10; Doc. 42, pp. 22, 33–37].  Around this time, Stadel informed defendant that Hill intended to split the Estate evenly between Luther and plaintiff [Doc. 1-1, p. 3; Doc. 27, p. 2].  Stadel and plaintiff allege that a written document purportedly created by Hill evidences this intent [Doc. 1-1, p. 3; Doc. 27, p. 2; Doc. 42, p. 20].  Plaintiff estimates the Estate's value at $9.7 million [Doc. 1-1, p. 4].  Ultimately, defendant agreed to share a portion of the Estate, and on July 8, 2022, plaintiff, defendant, and Luther executed a settlement agreement (the "Agreement") with defendant as the Estate's personal representative [Doc. 42, pp. 22–30].

Pursuant to the Agreement, defendant shall pay plaintiff 25 percent of the value of the Estate after liquidation and deductions for administrative expenses, taxes, and other costs [*Id.* at 25].  The Agreement acknowledges that liquidation of the Estate "likely cannot be accomplished within a year" and grants defendant sole discretion over the liquidation process [*Id.* at 25–27].[1]  On July 5, 2022, Stadel texted plaintiff, "Hey giving you an update. Everyone is good with [the] agreement . . . ." [*Id.* at 42].  On July 8, 2022, plaintiff signed the Agreement [*Id.* at 30].

The Agreement contains the following provision (the "Contractual Limitations Period"):

---

[1]Specifically, the Agreement provides: "[i]n that this Agreement concerns the sale of real estate and likely cannot be accomplished within a year, the parties agree that this Agreement is subject to the Statute of Frauds, and therefore, may not be amended or modified except in writing signed by each of the parties" [*Id.* at 26–27].

2

The parties agree that this Agreement shall be governed by the laws of the State of Tennessee without regard to any choice-of-law rules. The parties agree that any action based upon or related to this Agreement must be brought within the earlier of (a) six months from the date of the alleged breach or default or (b) one year from the date of execution of this Agreement . . . .

[*Id.* at 26]. After the Agreement's execution, defendant sent plaintiff an initial payment, but she ceased all payments thereafter [*Id.* at 57–61; Doc 1-1, p. 4; Doc. 27, p. 4].

On June 3, 2023, plaintiff received a letter from defendant's counsel (the "June 3 Letter") stating that the Agreement was null and void due to new information received by defendant [Doc. 42, pp. 31–33]. The June 3 Letter also states that defendant "unequivocally denies any and all obligations to perform under the Agreement and will not be making any payments or otherwise performing pursuant to the Agreement" [*Id.* at 31]. The Blount County General Sessions Court closed the Estate on January 22, 2024 [Doc. 1-1, p. 4; Doc. 27, p. 4]. In February 2024, plaintiff contacted defendant's counsel to inquire about future payments, but defendant's counsel denied any obligation under the Agreement [Doc. 1-1, pp. 4–5; Doc. 27, p. 4].

On April 23, 2024, plaintiff commenced this action in the Blount County Chancery Court [*See* Doc. 1-1]. She brings claims for breach of contract and equitable relief, seeking the imposition of a resulting trust [*Id.* at 5–6]. On June 3, 2024, defendant removed the action to this Court [Doc. 1]. On October 9, 2024, the Court denied a motion to remand this matter to state court [Doc. 20].

Since then, defendant has filed an amended counterclaim in which she alleges that plaintiff "hatched a scheme" to fraudulently forge the aforementioned written document in

3

an effort to obtain the Estate [Doc. 27, p. 7]. She brings a claim of fraud against plaintiff because of her allegedly false representations regarding the creation of Hill's written instrument [*Id.* at 10–11]. Also, she alleges civil conspiracy against Stadel on grounds that she conspired with plaintiff to accomplish her fraudulent deception of defendant [*Id.* at 11–15]. Defendant now moves for summary judgment on plaintiff's breach of contract claim and request for equitable relief [Doc. 42].

## II.  Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "[t]he non-moving party . . . must present sufficient evidence from which a jury could reasonably find for h[er]." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 252 (1986)).

## III.  Analysis

Defendant argues that she is entitled to summary judgment on plaintiff's breach of contract claim and request for the imposition of a resulting trust [*See* Doc. 44].  First, defendant contends that there is no genuine dispute as to any material fact regarding

4

plaintiff's breach of contract claim because it is time-barred [*Id.* at 7–11]. Second, defendant argues that there is no genuine dispute as to any material fact regarding plaintiff's request for the imposition of a resulting trust because plaintiff did not contribute funds to Hill's assets and her claim is based on an Agreement executed after Hill's assets were acquired [*Id.* at 12–15].

### A.  Breach of Contract Claim[2]

As to the breach of contract claim, plaintiff responds that genuine issues of material fact exist regarding: (1) enforceability of the Contractual Limitations Period; (2) fraudulent concealment by defendant; (3) and the timing of the alleged breach [Doc. 52, pp. 5–10].

### 1.  Enforceability of the Contractual Limitations Period

First, plaintiff argues that the Contractual Limitations Period is unenforceable as against public policy because it required plaintiff to file any claim before the Estate's liquidation was anticipated to be complete, foreclosing her ability to seek redress [*Id.* at 5–6]. Plaintiff cites two pieces of evidence to create a genuine issue of material fact: (1) the Agreement, which purportedly acknowledges that the Estate's liquidation would exceed one year; and (2) defendant's deposition, which allegedly confirms that liquidation is ongoing [*Id.* at 5]. Further, plaintiff contends that defendant, as the Estate's personal

---

[2]Tennessee law governs the parties' contractual dispute. *See Hisrich v. Volvo Cars of N. Am.*, 226 F.3d 445, 449 (6th Cir. 2000) ("A federal court with diversity jurisdiction applies the substantive law of the relevant state."). Here, the Agreement specifically provides that it shall be governed by Tennessee law "without regard to any choice-of-law rules" [Doc. 42, p. 26]. Further, the parties appear to agree that Tennessee contract law applies [Doc. 44, pp. 7–11; Doc. 52, pp. 5–10; Doc. 55, pp. 3–11; Doc. 60, pp. 1–5].

representative in control of the liquidation process, ensured that plaintiff "could not reasonably discover or act on breach within one year[.]" [*Id.* at 6].

While defendant appears to concede that liquidation was expected to exceed one year, she responds that plaintiff's action accrued when plaintiff received the June 3 Letter [Doc. 55, pp. 3–4]. Defendant contends that this letter, which plaintiff allegedly acknowledged receiving, expresses defendant's intent to repudiate the Agreement [*Id.* at 4]. Additionally, defendant argues that it is irrelevant that defendant controlled the liquidation process or that the Agreement allowed her to liquidate the Estate for more than one year [*Id.*].

To begin, the Court notes that the Tennessee legislature has enacted statutes of limitation for filing suit. *See* Tenn. Code Ann. § 28-3-101 *et. seq.* "However, Tennessee has a long history of upholding contractual limitations periods that reduce the statutory period for filing suits." *Hall v. Allstate Ins. Co.*, No. 3:13-CV-397, 2015 WL 8492458, at *3 (E.D. Tenn. Dec. 10, 2015) (citing *Jones v. Allstate Ins. Co.*, No. 93-5676, 1994 WL 677676, at *2 (6th Cir. Dec. 2, 1994) (citations omitted)). Here, the Contractual Limitations Period provides:

> The parties agree that this Agreement shall be governed by the laws of the State of Tennessee without regard to any choice-of-law rules. The parties agree that any action based upon or related to this Agreement must be brought within the earlier of (a) *six months from the date of the alleged breach or default or* (b) *one year from the date of execution of this Agreement* . . . .

[Doc. 42, p. 26 (emphasis added)]. Under Tennessee law, "[a] breach of contract gives rise to a cause of action by the aggrieved party." *Greene v. THGC, Inc.*, 915 S.W.2d 809, 810

6

(Tenn. Ct. App. 1995). Generally, "a cause of action arises when the acts and conduct of one party shows an intention to no longer be bound by the contract." *Id.* (citing *Brady v. Oliver*, 147 S.W. 1135, 1139 (Tenn. 1911)). Specifically, "where one party to a contract announces in advance his intention not to perform, the other party may treat the contract as broken, *and sue at once for the breach*, without waiting the arrival of the time fixed by the contract for performance." *Brady*, 147 S.W. at 1138 (emphasis added).

Like the defendant in *Greene*, here, defendant expressly repudiated her obligation to distribute future payments to plaintiff under the Agreement [*See* Doc. 42, p. 31]. In *Greene*, the plaintiff received a free, lifetime membership at a country club while he served as club manager. *Greene*, 915 S.W.2d at 810. After he left his employment, the defendant announced its intent not to honor his lifetime membership. *Id.* He later sued for restitution of dues paid after the statues of limitation lapsed. *Id.* There, the Tennessee Court of Appeals held that the statute of limitations barred the plaintiff's claim because his cause of action accrued upon the defendant's repudiation. *Id.* at 810–11.

In the present case, defendant clearly announced her "intention to no longer be bound" by stating that she "unequivocally denies any and all obligations to perform under the Agreement and will not be making any payments or otherwise performing pursuant to the Agreement" [Doc. 42, p. 31]. Thus, upon defendant's denial of liability in the June 3 Letter, plaintiff's cause of action accrued, and she was permitted to sue immediately [*Id.*]. However, plaintiff's claim is barred because she did not initiate suit within six months of the date that her cause of action accrued [*See id.*].

7

Plaintiff cites *Desgro v. Pack*, No. E2012-00918-COA-R3-CV, 2013 WL 84899 (Tenn. Ct. App. Jan. 8, 2013) for the proposition that a contractual provision that denies a party access to justice violates public policy [Doc. 52, p. 6]. However, there the Court of Appeals distinguished an unenforceable exculpatory clause from a contractual limitations period, which the Court upheld as reasonable, in part because it did "not exculpate defendant from most or all liability." *Desgro*, 2013 WL 84899, at *4–5. In that case, the plaintiff purchased a house and later discovered interior issues. *Id.* at *1. He filed suit thirteen months after the inspection, but his signed contract required filing suit within one year of the inspection. *Id.* Defendant moved for summary judgment, arguing that plaintiff's claims were untimely. *Id.* The Court of Appeals agreed with the trial court's determination that the contractual limitations period was reasonable since plaintiff signed the agreement, agreed to the contractual limitations period, and had approximately 11 months "after moving into the house to discover problems and file suit within the contractual limitations period." *Id*. at *5.

So too here, the Contractual Limitations Period is reasonable and does not exculpate defendant for "most or all liability." *See id.* Plaintiff received defendant's letter of repudiation on June 3, 2023, prior to the expiration of the Contractual Limitations Period; yet she did not file suit until April 23, 2024 [*See* Doc. 1-1; Doc. 42, pp. 31–33]. Since plaintiff was permitted to sue at once for defendant's breach, the Contractual Limitations Period is not void as against public policy. *See Desgro*, 2013 WL 84899, at *4 (noting that Tennessee courts have consistently upheld contractual limitations provisions). It is therefore immaterial whether the liquidation process was ongoing after the Contractual

8

Limitations Period lapsed or that defendant controlled the liquidation process. Moreover, just like the plaintiff in *Desgro*, plaintiff signed the Agreement, which contained the conspicuous Contractual Limitations Period [Doc. 42, pp. 22–30]. *Desgro*, 2013 WL 84899, at *5. Since plaintiff failed to exercise her right to sue within the proscribed time-period, there is no genuine dispute of material fact as to the enforceability of the Contractual Limitations Period.

### 2. Fraudulent Concealment

Second, plaintiff argues there is a genuine issue of material fact as to whether defendant fraudulently concealed her intent to breach the Agreement [Doc. 52, pp. 6–8].

### a. Plaintiff's Declaration

Before addressing the merits of this claim, the Court must first consider whether plaintiff's declaration creates a genuine issue of material fact regarding fraudulent concealment. In her response to summary judgment, plaintiff points to her declaration stating that she did not view the June 3 Letter as a refusal to perform under the Agreement [*Id.* at 7; Doc. 51-1, p. 3]. She contends that she viewed defendant's initial payment as an intent to comply with the Agreement, creating a genuine dispute of material fact as to fraudulent concealment [Doc. 52, pp. 6–7].

In reply, defendant contends that plaintiff provided contradictory statements by admitting in her deposition that she understood the June 3 Letter as a refusal to distribute future payments under the Agreement, while later declaring that she did not view the June 3 Letter as a refusal to perform [Doc. 55, pp. 6–9]. Thus, she seeks to disregard plaintiff's declaration as a sham affidavit submitted to avoid summary judgment [*Id.*].

9

In her sur-reply, plaintiff counters that her declaration "does not contradict her deposition testimony but clarifies her contemporaneous belief when she received the June 3, 2023, letter from [d]efendant's counsel" [Doc. 60, p. 3]. Plaintiff states that the deposition questions focus on "receipt and meaning" of the June 3 Letter rather than on her expectations about future performance [*Id.*]. As such, plaintiff alleges that the declaration is not a sham because it explores unexamined deposition topics [*Id.*].

Defendant again responds that plaintiff's testimony acknowledges that she understood defendant would not perform under the Agreement, leaving "no gaps that needed to be filled in by a later declaration" [Doc. 61, p. 4]. Defendant also argues that by using a past tense question, defendant's counsel elicited testimony about plaintiff's understanding of the June 3 Letter when she received it [*Id.*].

Under the sham affidavit doctrine, "it is well settled that a plaintiff may not create a factual issue for the purpose of defeating a motion for summary judgment by filing an affidavit contradicting a statement the plaintiff made in a prior deposition." *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991). This doctrine demonstrates "the importance of distinguishing legitimate efforts to supplement the summary judgment record from attempts to create a sham issue of material fact." *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 908 (6th Cir. 2006). To determine whether a contradictory affidavit should be considered, the Court "must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." *Id.* "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Id.*

10

Upon review of plaintiff's declaration and deposition, the Court finds that plaintiff contradicted her prior testimony. In her deposition, plaintiff testified to the following:

Q: And then read the last sentence to yourself.[3]

A: (Witness examines document.) Yes.

Q: What does that mean to you?

A: She's just not going to send any more either paperwork *or payment* or anything dealing with the agreement.

Q: Absolutely not going to do anything further at all regarding that settlement agreement?

A: I think that's what it said. Don't you?

Q: Is that what you *understood* it to mean?

A: Yes.

[Doc. 42, pp. 17–18 (emphasis added)]. In her subsequent declaration, plaintiff stated:

I did not understand the June 3, 2023, letter to mean the [d]efendant had permanently refused to perform under the Agreement. Given the Agreement's acknowledgement that liquidation would take more than a year and the [d]efendant's control over the process, I believed she might still make payments as the Estate's assets were sold. The initial payment, along with [d]efendant's pre-Agreement doubts regarding the legitimacy of the "Documents" reinforced my expectation that the [d]efendant would continue to perform.

[Doc. 51-1, p. 3]. The Court finds that plaintiff's declaration clearly contradicts her earlier deposition testimony.

---

[3]The last sentence of the June 3 Letter, referred to as the "document" in the deposition, states that defendant "unequivocally denies any and all obligations to perform under the Agreement and will not be making any payments or otherwise performing pursuant to the Agreement" [Doc. 42, p. 31].

11

In *Jones*, the Sixth Circuit upheld the district court's finding that plaintiff's claim was time-barred because she did not file suit within the applicable six-month statute of limitations period. *Jones*, 939 F.2d at 384–85. There, Jones testified in his deposition that he was told at a meeting that his previously filed grievance was closed. *Id.* at 384. After the defendants moved for summary judgment, Jones, much like plaintiff in the instant case, filed a contradictory affidavit stating that he was *not* told the grievance had been closed. *Id.* at 384–85. Thus, the Sixth Circuit held that defendant:

> knew or should have known as of [the date of the meeting] that his grievance was closed and that he would not be reinstated pursuant to the settlement agreement. As this knowledge was all he needed to discover that [defendant] had breached the agreement . . . his suit is time-barred.

*Id.* at 385. Applying *Jones*, when plaintiff received the June 3 Letter, she had all the knowledge she needed to realize defendant's alleged breach of the Agreement. *See id.* Since plaintiff previously testified that she understood the June 3 Letter to mean that defendant would not "send any more either paperwork or payment or anything dealing with the agreement[,]" she cannot create an issue of material fact by later filing a declaration stating that she did not understand the letter as a refusal to perform [Doc. 42, pp. 17–18].

Further, when asked whether she *understood* that defendant was "[a]bsolutely not going to do anything further at all regarding the settlement agreement[,]" plaintiff said, "[y]es[,]" leaving no gaps that needed to be filled in by a later declaration [*Id.* (emphasis added)]. Additionally, plaintiff's argument that her testimony reflected her understanding at the time of the deposition is undermined by counsel's use of a past tense question to

elicit testimony about plaintiff's understanding when she received the June 3 Letter [*See id.*]. Having given a clear answer in her deposition, plaintiff cannot disavow her testimony.

Moreover, while plaintiff suggests that defendant "intentionally postponed disclosure to allow the one-year contractual limitations period to lapse[,]" she offers no explanation or evidence supporting her knowledge of defendant's subjective intent, rendering her assertion speculative [Doc. 52, p. 7]. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citation omitted) ("[M]ere conclusory and unsupported allegations, rooted in speculation, do not meet [an opponent's burden to present genuine issues of fact].").  In fact, plaintiff received the June 3 Letter before the one-year Contractual Limitations Period lapsed, contradicting her claim that defendant intentionally postponed disclosure [Doc. 42, pp. 31–33].  Thus, plaintiff's declaration "fail[s] to constitute competent evidence establishing a genuine issue of material fact." *See Gardner v. Evans*, 920 F.3d 1038, 1055 (6th Cir. 2019).

### b.    Active Concealment of the Alleged Breach

With plaintiff's declaration excluded, the Court will examine the remaining evidence for an issue of material fact regarding the elements of fraudulent concealment needed to toll the statute of limitations.  Plaintiff claims that both: (1) defendant's control over the Estate's liquidation; and (2) defendant's delayed notification of ceasing payments present a triable issue of material fact [Doc. 52, p. 7].  Specifically, she alleges that defendant decided to cease payments in March 2023, but she did not notify plaintiff until June 3, 2023 [*Id.*].  Plaintiff suggests that defendant "intentionally postponed disclosure to allow the one-year contractual limitations period to lapse" [*Id.*].  Further, she contends that

13

her "reasonable reliance on defendant's initial payment and the Agreement's extended liquidation timeline" create a factual dispute regarding fraudulent concealment [*Id.*].

In reply, defendant argues that plaintiff has not produced admissible evidence showing that defendant concealed the action or failed to disclose material facts [Doc. 55, pp. 5–6]. To the contrary, defendant states that she expressly repudiated her obligations under the Agreement in the June 3 Letter [*Id.*]. Moreover, defendant claims that she learned from family and friends in March of 2023 that Hill's alleged will was illegitimate and decided sometime thereafter to cease payments [*Id.* at 8].

In Tennessee, fraudulent concealment tolls a statute of limitations when a defendant actively conceals a breach. *Redwing v. Cath. Bishop for Diocese of Mem.*, 363 S.W.3d 436, 461–62 (Tenn. 2012). To establish a claim for fraudulent concealment to toll the running of a statute of limitations, a plaintiff must prove: "(1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by 'withholding information or making use of some device to mislead' the plaintiff in order to exclude suspicion or prevent inquiry." *Id.* at 462–63 (citations omitted). "The statute of limitations is tolled until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment . . . ." *Id.* at 463. When the plaintiff "discovers or should have discovered

14

the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim, the original statute of limitations begins to run[.]" *Id.*

Here, the Court finds that plaintiff has not shown that defendant actively concealed plaintiff's injury or failed to disclose material facts. Plaintiff relied on defendant's testimony to claim that she decided to cease payments in March 2023 [Doc. 52, p. 7]. However, defendant's testimony does not make clear when defendant decided to cease payments [*See* Doc. 42, pp. 56–62]. When asked why she decided not to make future payments, defendant testified, "[o]n information I had received from family and friends on how I was deceived" [*Id.* at 62]. Plaintiff has not pointed to any evidence demonstrating when defendant decided to cease payments under the Agreement.

Additionally, while plaintiff emphasizes defendant's control over the Estate's liquidation, plaintiff clearly repudiated her obligation to perform under the Agreement in the June 3 Letter [*Id.* at 31]. When asked what the June 3 Letter meant to her, plaintiff responded, "She's just not going to send any more either paperwork or payment or anything dealing with the agreement" [*Id.* at 17–18]. Thus, defendant's control over liquidation is immaterial since she did not actively conceal her breach. Accordingly, there is no genuine dispute as to fraudulent concealment.

### 3. Timing of the Alleged Breach

Third, plaintiff alleges that there is a genuine issue of material fact regarding the breach's timing, arguing that the term "alleged breach" in the Agreement is subjective and turns on when plaintiff reasonably perceived a breach [Doc. 52, pp. 8–9]. Plaintiff claims that the alleged breach did not occur until defendant's attorney denied defendant's

15

obligations under the Agreement on February 21, 2024, making plaintiff's suit timely under the Agreement [*Id.* at 10].

In response, defendant argues that plaintiff's claim is time-barred [Doc. 55, pp. 9–11]. Namely, defendant asserts that plaintiff's action accrued on June 3, 2023, although she did not file suit until April 23, 2024 [*Id.* at 10–11]. Additionally, defendant responds that the term "alleged breach" in the Agreement is unambiguous, and the statute of limitation began to run upon defendant's denial of liability in the June 3 Letter [*Id.*].

In the instant case, the parties expressly agreed that "any action based upon or related to th[e] Agreement must be brought within the earlier of (a) six months from the date of the alleged breach or default or (b) one year from the date of execution of th[e] Agreement . . . ." [Doc. 42, p. 26]. Plaintiff claims that defendant breached the Agreement by "failing to remit payment pursuant to the Agreement" [Doc. 1-1, p. 5]. On June 3, 2023, plaintiff received a letter from defendant stating that she "will not be making any payments or otherwise performing pursuant to the Agreement" [Doc. 42, pp. 31–33]. Six months after this date was December 3, 2023.

Further, the parties executed the Agreement on July 8, 2022 [*Id.* at 22–30]. One year from that date was July 8, 2023. Since July 8, 2023, is earlier than December 3, 2023, plaintiff was required to bring suit by July 8, 2023. However, she did not do so until April 24, 2024 [*See* Doc. 1-1], more than nine months after the deadline.

Moreover, the Court finds that the phrase "alleged breach" is unambiguous. "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn.

16

2008) (quoting *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001)). Although plaintiff contends that this phrase suggests a subjective standard, her deposition makes clear that she understood the June 3 Letter to mean that defendant would not "send any more either paperwork or payment or anything dealing with the agreement" [Doc. 42, pp. 17–18]. Given the parties' mutual assent as to the June 3 Letter's effect, there is no genuine dispute of material fact as to the timing of the alleged breach. Accordingly, plaintiff's breach of contract claim will be **DISMISSED**.

### B. Plaintiff's Request for the Imposition of a Resulting Trust

Defendant also moves for summary judgment on plaintiff's request for the Court to impose a resulting trust as to the assets of the Estate [*See* Doc. 44]. Defendant argues that plaintiff's request fails because: (1) she did not contribute funds to Hill's assets; and (2) her claim is based on the Agreement executed after the assets were acquired [*Id.* at 12–15].

"[A] resulting trust is used to 'prevent unjust enrichment and protect an individual's equitable right to property when the legal title to that property is in the name of another.'" *Guerra v. Abuaita*, No. 1:19-CV-01073, 2020 WL 4352752, at *6 (W.D. Tenn. July 29, 2020) (quoting *Frazier v. Pomeroy*, No. M2005-00911-COA-R3-CV, 2006 WL 3542534, at *13 (Tenn. Ct. App. Dec. 7, 2006)). In other words, "'the owner of the money that pays for the property should be the owner of the property,' and a resulting trust protects such an interest" *Id.* (quoting *Smalling v. Terrell*, 943 S.W.2d 397, 400 (Tenn. Ct. App. 1996)). "The resulting trust doctrine is an equitable device 'used by courts to avoid unjust enrichment.'" *Stamps v. Starnes*, 649 S.W.3d 403, 408 (Tenn. Ct. App. 2021) (quoting *Story v. Lanier*, 166 S.W.3d 167, 184 (Tenn. Ct. App. 2004)).

17

A resulting trust is implied based on the intent of the parties. *Id.* In other words, "a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law . . . ." *Id.* at 408–09 (quoting *In re Est. of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993)).

To establish a resulting trust, "it must be shown that the beneficiary actually made payment, or incurred an absolute obligation to pay, as part of the original transaction of purchase." *Rowlett v. Guthrie*, 867 S.W.2d 732, 735 (Tenn. Ct. App. 1993) (citing *Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980)). Moreover, "the trust must arise *at the time of the purchase*, attach to the title at that time and not arise out of any subsequent contract or transaction." *Stamps*, 649 S.W.3d at 409 (citing *Livesay*, 611 S.W.2d at 584) (emphasis added)). The Court will address both requirements in turn.

### 1. Payment by the Beneficiary

First, defendant argues that plaintiff's request for the imposition of a resulting trust fails because plaintiff did not contribute funds to Hill's assets [Doc. 44, p. 12]. Plaintiff responds that the imposition of a resulting trust does not require plaintiff to contribute funds to the purchase of the property at the time of acquisition [Doc. 52, p. 11]. Rather, plaintiff argues that a resulting trust is appropriate when the transaction indicates an intent for the titleholder to benefit another [*Id.*]. Specifically, plaintiff asserts that her daily assistance, care, and companionship to Hill during his cancer battle constitute valuable consideration sufficient to create a resulting trust [*Id.*]. In reply, defendant submits that plaintiff's care

18

and companionship to Hill does not constitute adequate consideration to form a resulting trust [Doc. 55, pp. 11–14].

Viewing the evidence in a light most favorable to plaintiff, the Court finds that there is not enough evidence in the record to justify the creation of a resulting trust. At the outset, plaintiff concedes that her contributions do not constitute "direct financial payments toward the acquisition of [Hill's] assets . . . ." [Doc. 52, p. 11]. Moreover, plaintiff's argument that her care and companionship for Hill constitute consideration sufficient to form a resulting trust is undermined by *Estate of Queener v. Helton*, 119 S.W.3d 682 (Tenn. Ct. App. 2003) and *Rowlett*, 867 S.W.2d 732 in which the Tennessee Court of Appeals declined to impose a resulting trust.

In *Estate of Queener*, the plaintiff lived with the decedent for more than twenty years, cooked for him, cleaned, worked on his farm, took care of his mother, and assisted his business without compensation. 119 S.W.3d at 684. There, the Tennessee Court of Appeals reasoned that no resulting trust existed because the plaintiff's relationship with the decedent "was independent and separate from any transactions he made regarding his property, and there was no proof of any consideration provided by her toward any property in the estate." *Id.* at 687. In *Rowlett*, the plaintiff lived with the decedent, made improvements to her property, and supported her. 867 S.W.2d at 732. There, the plaintiff filed a claim against the Estate based on a resulting trust. *Id.* The Tennessee Court of Appeals held that there was no proof of any agreement to establish a resulting trust. *Id.*

Just as in *Estate of Queener* and *Rowlett*, plaintiff's relationship with Hill is "independent and separate" from any transactions he made regarding his property. *See Est.*

19

*of Queener*, 119 S.W.3d at 687; *Rowlett*, 867 S.W.2d at 735.   Apart from plaintiff's assertion that she provided daily assistance to Hill, accompanied him to his medical appointments, and offered him companionship during his cancer battle, there is no proof in the record that plaintiff provided any consideration "toward any property in the estate." *See Est. of Queener*, 119 S.W.3d at 687.   Nor is there any evidence that plaintiff cared for Hill in expectation of compensation. *See id.* (refusing to impose a resulting trust where a claimant who was "on call" for the decedent 24 hours a day did not expect compensation); *see also Rowlett*, 867 S.W.2d at 735 (refusing to impose a resulting trust where the claimant did not act in expectation of payment for his work on the decedent's property).   Therefore, plaintiff's care and companionship towards Hill does not constitute valuable consideration sufficient to impose a resulting trust under Tennessee law.

### 2.   Timing of the Resulting Trust

Second, defendant contends that plaintiff's request for equitable relief fails because her claim is based on the Agreement executed on July 8, 2022, after Hill's death and after Hill acquired the assets [Doc. 44, p. 15].   In response, plaintiff argues that the Agreement grants her 25% of the Estate's funds, evidencing defendant's intent to recognize plaintiff's equitable interest in the Estate [Doc. 52, pp. 11–12].

In *Stamps*, the Tennessee Court of Appeals refused to impose a resulting trust where "plaintiff paid nothing toward the purchase of the [p]roperty[,]" and she did not "incur any obligation to pay as part of the original transaction of purchase."   *Stamps*, 649 S.W.3d at 409.   There, the decedent purchased the property before he married the plaintiff, and there was no evidence she had any knowledge of the property when he purchased it.   *Id.*

20

In her response to defendant's motion for summary judgment, plaintiff conceded that her contributions do not constitute financial payments toward the acquisition of the Estate [Doc. 52, p. 11]. Nor does plaintiff provide any evidence that she incurred any obligation to pay as part of Hill's acquisition of the Estate. Rather, plaintiff's claim is based on the Agreement executed on July 8, 2022, after Hill took title to the assets [Doc. 42, pp. 22–30]. Thus, plaintiff's request for a resulting trust is based upon a subsequent contract with defendant. *See Stamps*, 649 S.W.3d at 409 ("To establish a resulting trust upon land . . . the trust must . . . not arise out of any subsequent contract or transaction."). Since plaintiff did not pay or incur an absolute obligation to pay as part of Hill's original transaction of purchase, her request for the imposition of a resulting trust is **DENIED**.

## IV. Conclusion

For the reasons explained above, defendant's motion for summary judgment [Doc. 42] is **GRANTED**. Plaintiff's breach of contract claim is **DISMISSED**, and plaintiff's request for the imposition of a resulting trust is **DENIED**. Defendant's counterclaim(s) and third-party claim(s) remain pending.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE